[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter arises out of the granting of unemployment compensation by the administrator to the defendant or claimant herein, Mrs. Lisa Lotto. The appellant herein is the employer, BIC Corporation. The Administrator of the Unemployment Compensation Act is represented by the Attorney General of the State of Connecticut.
On January 19, 1996, the claimant, Lisa Lotto, left her employment at BIC pursuant to her resignation tendered January 11, 1996. Thereafter, the claimant filed for unemployment compensation which was granted on March 6, 1996. The reason for the award was that she had voluntarily left employment for reasons, which constituted good cause attributable to her employer. This decision was appealed to an appeals referee who, on December 20, 1996, affirmed the Administrator's decision. Subsequently, this decision was appealed to the Board of Review. The Board initially reversed the decision of the referee modifying in part the facts that had previously been found. The claimant then filed a Motion to Reopen the Board's decision, which was subsequently granted, withdrawing the prior decision and further amending the findings of fact.
The employer filed an appeal from this decision to the Superior Court and filed a motion to correct the findings which motion was denied. An amended appeal was filed challenging the Board's decision as to their motion to correct.
"in appeals of this nature, the Superior Court does not try the matter de novo. It is not its function to adjudicate questions of fact. Nor may it substitute its own conclusions for those of the Board. . . . Rather, it is the function of the court to determine, on the record, whether there is a logical and rational basis for the decision of the Board or whether, in the light of the evidence, the Board has acted illegally or in abuse of its discretion. . . ." Calnan v. Unemployment CompensationAct, 43 Conn. App. 784-85. (Internal quotations and citations omitted.)
Appeals such as that before the court are governed by § 31-249b of the Conn. General Statutes. This section grants to the administrator and all other parties the right to appeal from any decision of the Board. Section 39-249b goes on to describe what the record before the referee and the Board of Review shall consist of.
 "The record shall consist of the Notice of Appeal to CT Page 8019-n the referee and the board, the notices of hearing before them, the referee's findings of fact and decision, the findings and decision of the Board, all documents admitted into evidence before the referee and the board or both and all other evidentiary material accepted by them. Upon request of the court, the board shall (1) in cases in which its decision was rendered on the record of such hearing before the referee, prepare and verify to the court a transcript of such hearing before the referee; and (2) in cases in which its decision was rendered on the record of its own evidentiary hearing, provide and verify to the court a transcript of such hearing of the board. In any appeal, any finding of the referee or the board shall be subject to correction only to the extent provided by section 519 of the Connecticut Practice Book." Chapter 519 of the Connecticut Practice Book is now chapter 22.
Section 22-9 of the Connecticut Practice Book in its pertinent part reads as follows:
 "(a) Such appeals are heard by the court upon the certified copy of the record filed by the board. The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses. . . ."
It goes on further in paragraph B to state the following:
 "(B) Corrections by the court of the board' s finding will only be made upon the refusal to find a material fact which was an admitted or undisputed fact, upon the finding of a fact in language of doubtful meaning so that its real significance may not clearly appear, or upon the finding of a material fact without evidence."
The issues to be determined herein are (1) whether the Board's decision CT Page 8019-o concluding that the claimant had voluntarily left suitable work for good cause attributable to her employer is unreasonable, arbitrary or illegal, and (2.) whether the Board's decision denying the plaintiff (appellant's) motion to correct the findings should be upheld in accordance with § 22-9 of the Connecticut Practice Book.
The referee's findings of fact as modified by the Board of Review disclose that the defendant was employed by the plaintiff commencing August 21, 1989 and ended with her resignation effective January 19, 1996. The claimant worked reasonably well with her immediate supervisor. She did not work reasonable well, however, with the credit manager. The credit manager was regularly and repeatedly guilty of misbehavior with several of the claimant's coworkers during the final months of her employment. The women were referred to as babes and that on occasion he would lose his temper and yell at them in a rude and offensive manner.
The claimant during her employment suffered from multiple sclerosis, which became aggravated during the latter part of 1995 due to the stressful nature of her employment. In March of 1995, she complained to an employee of the Human Resources Department about conditions existing in the Credit Department. The Director of Human Services subsequently indicated to the claimant that they were aware of conditions existing in the Credit Department, that other complaints had been made and that the matter should be addressed by upper management. She was subsequently approached by a coworker who upbraided her for complaining about the existing conditions. In November of 1995, her physician, concerned about the stress under which she was working, suggested that she take time from her employment; that her working conditions were aggravating the symptoms of her multiple sclerosis.
The claimant could not leave her employment at that time, needing the group health coverage from her employer. In an effort to remove herself from the stressful working conditions and desiring to remain with BIC Corporation, the claimant posted for a position in the Traffic Department.
On December 28, 1995, the claimant again met with the party from Human Resources about her working conditions. It was agreed that they would wait and see what the outcome would be if her request for a transfer to the Traffic Department were granted. She met again with Human Resources on January 11, 1996. At that time, the claimant was informed that the transfer was going to another employee. She then informed Human Resources that she was tendering her resignation. The claimant again mentioned her stressful working environment. The plaintiff knew that her supervisor was going to be discharged but was unable to divulge that information to CT Page 8019-p her. Instead, she suggested that she "stick it out." Her response was that her last day would be January 19, 1996.
On January 11, 1996, the claimant had two separate interviews with Human Resources. When she became aware of the fact that the position in the Traffic Department was given to someone else and having informed them of the stress she was suffering from, she asked if there was any other position at BIC that she might be eligible to transfer to. The answer was in the negative, which answer precipitated her resignation.
At her exit interview, Human Resources informed her that they were aware of the problem in the Credit Department; that changes were going to be made; but at no time did they inform her that the cause of the problem, the Credit Manager, was going to be discharged, nor did they in the interim period between January 11, 1996 and January 19, 1996 offer her any transfer to a less stressful position.
The regulations for Connecticut State Agencies, Labor, §31-236-22(a)(1)(c) states that good cause attributable to the employer is established when "working conditions threatened the individual's health, either by causing illness or by contributing to the aggravation or worsening of the individual's medical condition . . ." The Board when it granted the claimant's motion to reopen found that the interaction between the claimant and her manager caused her to suffer stress and that the stress was exacerbating her multiple sclerosis. Also, that she sought medical treatment for her aggravated symptoms and that her doctors prescribed anxiety medication and advised her to avoid working. in a stressful environment. The Board in reversing its earlier decision held that the claimant did advise her employer of her medical condition and that she did explore reasonable alternatives to her leaving.
The notes of the Human Resources employee substantiate this. The employer had ample opportunity to offer other alternative employment but it failed to do so and in fact informed the claimant that no other position was available.
As for the plaintiff's motion to correct, the court is bound by §22-9 of the Connecticut Practice Book. In its motion, the plaintiff challenged two of the Board's findings as set forth in its decision dated August 1, 1997 granting the claimant's motion to reopen. The employer wishes to have the Board delete from its findings in the first full paragraph on page 3 the following: "and that she would have to leave her position if an internal transfer to the traffic department was not approved by her employer", and in the third sentence, the following: "and CT Page 8019-q of the need to leave her employment and that the claimant provided the employer with ample opportunity to suggest reasonable alternatives to the claimant's leaving her job." There was sufficient evidence in the notes of the Human Resources person to support that finding as well as the credible testimony of the claimant herself. When informed by Human Resources that she was not going to get the transfer, she at that time informed Human Resources that she would have to leave BIC. When asked why, she replied that it was her only chance, to. leave the Credit Department, that she was totally stressed out. In addition, there was the claimant's testimony at the referee's hearing wherein she indicated that she just can't stay in the department and asked if there was anything else in the company. The response was in the negative. Human Resources notes of the March, 1995 meeting show that the claimant was visibly shaken about what was occurring in the Credit Department and that she knew an alternative was to leave her employment at BIC.
As for the second request to correct challenging the Board's finding that the claimant provided ample alternatives to her leaving her job, the evidence discloses that as far back as March, 1995, the plaintiff initially voiced her concerns and again on December 28, 1995 and January 11, 1996, continued to reiterate her claims. That her employer was aware of the problem is found in the information disclosed by Human Resources that they were aware of the same, yet nothing was done.
If there is any evidence at all to support a finding of the Board, it may not be corrected by the court. Grogan v. New Britain, 175 Conn. 175,177. This court cannot review the conclusions of the Board when these depend upon the weight of the evidence and the credibility of witnesses.
In ruling on a motion to correct, the court is bound by the provisions of § 22-9 of the Connecticut Practice Book.
The role of the court is to determine whether the Board's decision is arbitrary, unreasonable or illegal. Calnan v. Administrator, supra.
The court finds that the Board's decision in granting benefits to the defendant Lotto and denying the plaintiff's motion to correct was neither unreasonable, arbitrary or illegal and not in abuse of its discretion. The plaintiff's appeal is denied and judgment may enter for the defendants accordingly.
The Court
Curran, J. CT Page 8019-r